ORAL LANE, APPELLANT, v. OGALLALA LIVESTOCK COMMISSION COMPANY, A NEBRASKA CORPORATION, ET AL., APPELLEES.

147 N. W. 2d 518

Filed December 29, 1966. No. 36297.

McGinley, Lane, Mueller & Shanahan, for appellant.

Firmin Q. Feltz, for appellees.

Heard before WHITE, C. J., SPENCER, BOSLAUGH, BROWER, SMITH, and McCOWN, JJ., and C. THOMAS WHITE, District Judge.

BOSLAUGH, J.

This case involves conflicting claims to the proceeds from the sale of livestock which were produced and sold pursuant to an agreement between the plaintiff, Oral Lane, and Harold Swan. The defendants are the Ogallala Livestock Commission Company and The First National Bank in Ogallala, Nebraska. The bank claims a right to the proceeds under chattel mortgages executed by Swan. The Ogallala Livestock Commission Company disclaims any interest in the proceeds.

The plaintiff is the owner and lessee of land in Arthur County, Nebraska. Prior to 1962, the plaintiff employed Swan on a monthly basis to look after a herd of cattle which the plaintiff maintained upon the land.

In 1962, the plaintiff and Swan entered into an agreement whereby Swan was to be compensated by sharing in the proceeds from the sale of cattle produced on the plaintiff's land. In March 1963, this agreement was reduced to writing and is identified in the record as exhibit 1. The agreement provided, generally, that the plaintiff would furnish the land and the cattle and that Swan would furnish the necessary labor and pay $3,500 to the plaintiff as rent for the use of the premises. Each party was to pay one-half of the expense of feed, salt, minerals, cake, drugs, medicines, and veterinary service. There were specific provisions as to fences, equipment, gasoline, propane, machinery repairs, well and tank maintenance, taxes, and losses of livestock.

Swan was to be compensated by receiving three-fifths of the net proceeds realized from the sale of the " '1962' " calves. Advances for cake, feed, and "other expenses or costs of operation" were to be charged against the interest of the party who received the advance.

After the 1962 calves had been sold, Swan took the

check from the commission company, which was payable to the plaintiff, into the bank, and an employee of the bank helped Swan make out a settlement sheet. In this settlement, the rent due the plaintiff together with the amount due the plaintiff for "cake, etc." were deducted and the plaintiff paid Swan the net amount due him.

In the fall of 1963, the plaintiff and Swan entered into an extension agreement which extended the original agreement to October 1, 1964.

After the 1963 calves had been sold, Swan again took the check into the bank to have a settlement sheet prepared. Swan testified that "trouble" developed then because there wasn't enough money to go around. The bank had its name put on the check which was sent to the plaintiff. The plaintiff refused to endorse the check and this action followed.

The controversy concerns the payment of the $3,500 rent due the plaintiff. The plaintiff contends that the rent is payable from the proceeds of the sale of the livestock. The bank claims, in effect, that the rent was a separate item of indebtedness between the plaintiff and Swan; that in the absence of a provision specifying when it was due and payable, it was not due until the expiration of the term; and that it should not be deducted from Swan's share of the proceeds from the sale of the livestock.

The case turns on the construction of the agreement between the plaintiff and Swan. As we view the record, Swan's right under the agreement was to receive three-fifths of the net proceeds from the sale of the cattle as compensation for his services under the contract. Since the plaintiff furnished both the land and the cattle, the rent due the plaintiff was a device to equalize the contributions of the parties to the agreement. It was an "expense or cost of operation" which was properly "charged against the interest to be received" by Swan. The use of the land was an "advance" by the plaintiff

although it did not involve an expenditure of funds by him.

The evidence shows that this was Swan's understanding and interpretation of the agreement. The settlement made after the sale of the 1962 calves confirms this understanding. The interpretation given a contract by the parties themselves while engaged in the performance of it is one of the best indications of the true intent of the contract. Lortscher v. Winchell, 178 Neb. 302, 133 N. W. 2d 448; Weiss v. Weiss, 179 Neb. 714, 140 N. W. 2d 15.

The rights of the bank in this case are entirely derivative. The bank could not obtain from Swan any greater interest under the contract than he possessed. The rent was chargeable against the interest to be received by Swan from the proceeds of the sale of the livestock.

It is unnecessary to consider the plaintiff's contention in regard to the validity of the bank's mortgages or the bank's contentions in regard to an agister's lien.

The judgment of the district court, which directed the payment of $3,500 to The First National Bank in Ogallala, Nebraska, from the sum then in the registry of the court, is modified to provide that the payment shall be to the plaintiff. The judgment as modified is affirmed.

AFFIRMED AS MODIFIED.

McCown, J., dissenting.

The action here is not a suit for an accounting between the parties to a contract, but rather a determination of priority as to a specific fund between two creditors of the same debtor. It involves a chattel mortgage on specifically described cattle and the rights of the mortgagee under that mortgage. Swan's ownership or mortgageable interest in the cattle or the fund involved, while determined from the terms of the contract, is separate and distinct from his interest in the contract. The bank's chattel mortgage was made on the strength of the written contract, but the bank was not a party to the contract. The 1963 settlement between the plaintiff and

Swan is relied upon as establishing the intent of the parties to the contract. There is no showing in the record as to when the settlement was had with reference to the termination of the contract year, nor when the sale of the prior year's calves was made. The only matter involved of record in 1963 was an accounting, and there was no issue at the time of the settlement over either the rent money or a chattel mortgage interest.

The basic question here is whether, under the terms of the contract, Swan had a mortgageable interest in the specific livestock or the proceeds of their sale, and, if so, what that interest was at the time the bank's chattel mortgage lien attached. The trial court determined the case on that basis and I, therefore, cannot concur in the majority opinion.